UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARRY McCOWN, **Plaintiff**, vs. CAROLYN W. COLVIN, Commissioner of Social Security, **Defendant**. | CAUSE NO. 1:15-cv-511-SEB-DKL |

### REPORT AND RECOMMENDATION

Plaintiff Barry McCown applied for a period of disability and disability benefits under Title II of the Social Security Act, alleging a disability due to degenerative disc disease that began on January 7, 2011. The defendant Commissioner denied his application and Mr. McCown now sues for judicial review of the Commissioner's decision. The district judge referred the issues to this magistrate judge for submission of a report and recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). *Order Referring Issues to Magistrate Judge* [doc. 8].

### Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age,

2

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's

impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work

level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

## Background

By a previous application, Mr. McCown received a closed period of disability, extending from August 2006 through August 2008. A second application resulted in a final decision that he was not disabled from August 2008 through the date of the ALJ's decision, January 6, 2011. Because Mr. McCown apparently did not seek judicial review of that decision, his non-disability status for that period is *res judicata*. Mr. McCown's alleged onset date in this case is January 7, 2011, the day after the end of that period. Mr. McCown does not dispute the ALJ's finding on his present application that he last met the insured status requirements for Title II disability-insurance benefits on March 31, 2011. (R. 18.) Therefore, to be eligible for Title II benefits under his present claim, Mr. McCown must have become disabled during the brief period from January 7, 2011, to March 31, 2011, inclusive.

Mr. McCown last worked as an airline mechanic. He claims that he is disabled as a result of a back injury that he sustained in 1989 or 1990, which has progressively worsened during the last two years. He alleges that his back pain is exacerbated by staying in one position too long. The pain causes functional limitations in his abilities to sit, stand, walk, lift, reach, twist, and bend. (R. 21.) He has been placed on pain medications, which have improved his pain, but they have side effects, such as drowsiness and concentration difficulties (forgetfulness, feeling faint, drowsiness). (*Id.*) He had a spinal-court stimulator implanted, which helps relieve, but not eliminate, his

pain. He has used an nonprescribed cane in the past, but one now has been prescribed. (*Id.*, at 21, 30-56); *Memorandum of Plaintiff*, at 2-3. Mr. McCown alleged disabling limitations. He could walk only one block, could stay in one position for only a short time, could not do much during the day, could not do dishes, and typically lies down to get comfortable.

After his applications were denied on initial and reconsideration reviews by the state agency, Mr. McCown requested and received a hearing before an ALJ. Mr. McCown and a vocational expert testified at the hearing, and Mr. McCown was represented by counsel who represents him in the present suit. The Commissioner's Appeals Council denied Mr. McCown's request to review the ALJ's denial of his claim, and this suit followed.

At step one of the sequential evaluation process, the ALJ found that Mr. McCown had not engaged in substantial gainful activity since his alleged onset date. At step two, she found that he had the severe impairment of degenerative disc disease. At step three, she found that he did not have an impairment or combination of impairments, severe and not severe, that satisfied any of the listings of impairments. She specifically articulated her finding regarding listing 1.04, disorders of the spine.

For purposes of steps four and five, the ALJ determined Mr. McCown's residual functional capacity. She found that, for the relevant period, he had the capacity for sedentary work with additional exertional, postural, and environmental restrictions.

7

Based on this RFC, the ALJ found, at step four, that Mr. McCown could not perform his past relevant work as an airplane mechanic. Finally, at step five, the ALJ found that, considering Mr. McCown's RFC, age, education, and skill level, and relying on the testimony of a vocational expert, there were significant numbers of jobs that he could perform in the national economy.

## Discussion

Mr. McCown asserts one error in the ALJ's decision: he argues that she failed to assign proper weight to, and to articulate her evaluation of, the opinions of his treating physician, Dr. Kowlowitz. Dr. Kowlowitz produced two opinions: the first, a "Lumbar Spine Residual Functional Capacity Questionnaire" (R. 273) ("*2006 Opinion*"), is dated August 29, 2006, over four years before the relevant period,[2] and the second, a "Medical statement regarding physical abilities and limitations" (R. 272) ("*2013 Opinion*"), is dated December 5, 2013, over two years after expiration of the relevant period, and over seven years after the date of the first opinion. Mr. McCown argues that Dr. Kowlowitz's opinions should have been given controlling weight or, at the least, great weight and that the ALJ should have articulated his evaluation of the factors that he was required to consider when evaluating the opinions.

---

[2] Whether this questionnaire was prepared and submitted to support Mr. McCown's first application for benefits, which resulted in the Commissioner's determination of a closed period of disability from August 29, 2006, through August 28, 2008, seems likely but does not appear on the current record.

8

Mr. McCown points to the following opinions of Dr. Kowlowitz regarding his functional abilities that the ALJ failed to properly evaluate and credit: **(1)** he can stand/walk for fifteen minutes at one time and a total of one hour in a work day, *2013 Opinion* (R. 272); **(2)** he can sit for thirty minutes at one time and a total of two hours in a work day, *id.*; and **(3)** he is likely to be absent from work, on average, more than four days each month, *id*. *Memorandum of Plaintiff* [doc. 10], at 10.[3]  Mr. McCown argues that these opinions, properly credited, compel a finding of disability because the vocational expert testified that no jobs would exist for a person who would be absent as often as Dr. Kowlowitz expected and Social Security Ruling 96-8p defines sustained and continuous work as eight hours a day, five days a week, which is inconsistent with Dr. Kowlowitz's opined three hours maximum for standing, walking, and sitting.[4]

---

[3] All of these opinions are from Dr. Kowlowitz's *2013 Opinion*. In his *2006 Opinion*, Dr. Kowlowski opined that Mr. McCown could stand/walk for less than two hours total in a work day, which is consistent with his *2013 Opinion* (one hour) and he could sit for less than two hours in a work day, which is worse than his *2013 Opinion* (two hours). (R. 275.) Dr. Kowlowski opined that Mr. McCown could sit longer at one time in 2013 (thirty minutes) than he could in 2006 (twenty minutes). (R. 274.) Dr. Kowlowitz stated that Mr. McCown's ability to stand at one time declined from twenty minutes in 2006, (*id.*), to fifteen minutes in 2013. Dr. Kowlowitz did not record an opinion on Mr. McCown's duration of walking at one time in 2006; rather, he stated that Mr. McCown could walk less than one block. (*Id.*)  In 2006, Dr. Kowlowitz opined that Mr. McCown would miss more than four days per month, (R. 276), the same amount as he opined in 2013.

[4] Dr. Kowlowtiz recorded many more opinions, some of which are mentioned by Mr. McCown, but the four mentioned here (maximum sitting, standing, and walking, and absentee rate) are the ones specifically identified by Mr. McCown as contrary to the ALJ's finding of not disabled. *Memorandum of Plaintiff*, at 10. However, Mr. McCown's argument that the ALJ failed in his affirmative duty to minimally articulate his evaluation of Dr. Kowlowitz's treating-source opinion, according to the required factors, would apply to the entireties of his opinions.

9

The Commissioner's adjudicators must consider several factors when determining the weight to give medical opinions: **(1)** examining relationship (more weight should be given to opinions after examination), **(2)** treating relationship (more weight should be given to treating-source opinions), **(3)** supportability (more weight should be given to opinions supported by more evidence and explanation, and to opinions that consider more of the pertinent evidence, including other medical opinions), **(4)** consistency of the opinion with the record as a whole, **(5)** specialization (more weight should be given to the opinions of a specialist involving his specialty), and **(6)** other relevant factors, such as the degree of the source's understanding of the Social Security disability program and its standards, and the extent of the source's familiarity with the other evidence of record.  20 C.F.R. § 404.1527(c).

A treating source's opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  If a treating source is determined not to be entitled to controlling weight, the the adjudicator must determine what less-than-controlling weight to assign to the opinion.  The opinion may not be rejected simply because it is not due controlling weight.  In making this determination, the adjudicator must consider the six factors listed above and two additional factors:  **(1)** the length of the treatment relationship and the frequency of examinations, and **(2)** nature and extent of

the course of treatment (*e.g.*, the degree of knowledge and experience the treating source has with the claimant's impairments, the treatment actually provided, the kinds and extent of examinations and testing the source has performed or ordered).  *Id.*, § 404.1527(c)(2)(i) and(ii).  S.S.R. 96-2p; S.S.R. 96-8p.

An ALJ must give good reasons for the weight he gives a treating source's opinions.  20 C.F.R. § 404.1527(c)(2).  "[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  S.S.R. 96-2p.

In discussing the evidence relevant to RFC, the ALJ found that, since his alleged onset date, Mr. McCown's treatments "continued to be generally successful in improving his symptoms."  (R. 22.)  The ALJ noted that, during Dr. Kowlowitz's examination in January 2011, Mr. McCown reported worse activities and quality of life, and constant low-back pain, but also reported that treatment provided 51 to 75% pain relief and that he had no side effects from medications.  In February 2011, his spinal stimulator was repaired and adjusted.  At a follow-up visit in March 2011, Mr. McCown reported that the current treatment was effectively managing his pain and that his activity, sleep, and quality of life were better.  He continued to deny medication side effects and reported good stimulation with the adjustments and repairs to his spinal stimulator.  The ALJ

11

found that Mr. McCown's examinations during the relevant period were "essentially unremarkable for serious signs of impairment, with slowed transitions and use of a cane, but no acute distress and normal posture."  (R. 22.)

The ALJ noted that, after his date last insured (March 31, 2011), Mr. McCown continued to report that his treatments were generally successful:  typically, 51-75% pain relief and better activity, sleep, and quality of life.  Records for 2012 from the Center for Pain Management, where Dr. Kowlowitz practiced, showed 26-50% pain relief, reports of better quality of life, and regular denials of medication side effects.  (R. 22.)

Mr. McCown testified that he had medication side effects, yet the record shows that he denied side effects to his treating sources on numerous occasions.  He alleged significant pain levels yet was in no acute distress during examinations and was able to adequately sit through the thirty-minute ALJ's hearing.  He testified that he could not do much during the day, typically lying down trying to get comfortable, and alleged that he could not even wash dishes because of his pain, yet he also reported that he could shop with his wife and regularly drive one of his children to school, and he reported to his treatment provider in May 2013, long after his date last insured, that he could care for children, do light house cleaning, do light yard work, socialize with family and friends, and shop.  (R. 23.)  Mr. McCown testified that, despite trying not to use a cane, he eventually used it most of the time when outside the home, yet treatment records show

12

no doctor's recommendation or prescription for a cane until October 2012, over a year after his date last insured. (R. 22.)

The ALJ concluded that Mr. McCown's allegations and testimony about the disabling degree of his subjective symptoms and functional limitations were extreme and not credible "given the relatively weak medical evidence of record." (R. 22, 23.) She found that his descriptions of his symptoms and limitations were inconsistent and unpersuasive based on the above evidence. The ALJ also found that Mr. McCown's treatment was "essentially routine" and "generally successful." (R. 23.)

Addressing Dr. Kowlowitz's opinions directly, the ALJ gave them "little weight." Her articulated reasons were:

> This doctor's own treatment notes do not reflect the type of *clinical signs and objective findings* one would expect if the claimant were truly disabled. Updated imaging has not been performed since the alleged onset date that would help support this degree of limitation. This medical opinion was given little weight because it is generally inconsistent with the *objective medical evidence* as a whole (20 CFR 404.1527).

(R. 23 (emphases added).) ("Updated imaging" apparently refers to an MRI of Mr. McCown's lumbar spine that was performed in September 2002, nine years before his alleged onset date.) In this section of her opinion, articulating the weight that she assigned to Dr. Kowlowitz's opinion, the ALJ cited none of the "objective medical evidence" in the record that she believed was "generally inconsistent with" Dr. Kowlowitz's medical opinions. Even if other parts of the ALJ's decision are examined,

13

the only objective medical evidence mentioned is the MRI performed in 2002, which the ALJ described as showing multilevel degenerative disc disease from lumbar 3 to sacral 1, with disc herniation at lumbar 3-4. (R. 22.) But that is evidence of only the existence and location of degenerative disc disease; it is not objective medical evidence of the degree of Mr. McCown's symptoms or their functionally-limiting effects, of which there cannot be objective medical evidence. S.S.R. 96-7p. The only evidence that the ALJ cites as inconsistent with the degree of functional limitations opined by Dr. Kowlowitz are Mr. McCown's subjective descriptions of his symptoms, activities, abilities, effectiveness of treatments, and medication side effects, and medical notations that he did not appear to be in acute distress during examinations. None of those constitutes "objective medical evidence."

The ALJ also did not identify the "type of clinical signs and objective findings one would expect if the claimant were truly disabled," which, because she is not a medical doctor, she is not qualified to identify in any event. The ALJ's statement that "[u]pdated imaging has not been performed since the alleged onset date that would help support this degree of limitation" suffers from the same fault. Not only does she fail to identify the "updated imaging" that she finds is missing and to explain how that imaging would help to support Dr. Kowlowitz's functional-limitations opinions, she cites no qualified medical opinion stating that the absence of particular imaging results discredits Dr. Kowlowitz's opinions.

14

As noted, in other parts of her decision, the ALJ relies on inconsistencies between Mr. McCown's historical reports of his symptoms, activities, and limitations and his current testimony and allegations as the primary reason to find his current statements not credible and to credit his pre-application statements. She also cites Mr. McCown's "essentially routine" and successful treatments, his ability to sit through the hearing, a cane not being prescribed until after the relevant period, and the opinions of the state-agency reviewers to find that her found RFC accurately describes Mr. McCown's capacity. While these factors also might have supported assigning "little weight" to Dr. Kowlowitz's opinions, they were not the reasons cited by the ALJ to do so and the Court is limited to the ALJ's reasons. She relied solely on the lack of supporting objective medical evidence and the existence of inconsistent objective medical evidence. Neither substantial evidence nor law supports those reasons.

The ALJ's discussion of the weight she accorded Dr. Kowlowitz's opinions also fails to address all of the factors that 20 C.F.R. § 404.1527 requires to be considered. She did not discuss the length, nature, and extent of the treatment relationship; specialization; or other factors.

Because the vocational expert testified that a significant number of jobs would not exist for a worker who had the limitations described in Dr. Kowlowitz's opinion, (R. 54 (mistakenly referring to Exhibit 8-F, rather than 7-F)), the ALJ's error in weighing Dr. Kowlowitz's opinions is not harmless.

## Conclusion

Because the ALJ erred in weighing, and articulating her weighing of, Dr. Kowlowitz's opinions, the Commissioner's decision should be reversed and remanded for reconsideration.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 07/26/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.